**REPAIR MASTERS CONSTRUCTION, INC., Plaintiff/Respondent,**

v.

**Wanda GARY, Defendants/Appellant.**

**No. ED 91290.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 3, 2009.

Thomas Carter, II, St. Louis, MO, for appellant.

Jeffrey R. Schmitt, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Wanda Gary ("Homeowner") appeals from the judgment of the trial court awarding Repair Masters Construction, Inc. ("Contractor") $8,473.78 in damages for breach of contract and $2,000.00 for its attorney's fees. We reverse.

Homeowner's house located at 4611 St. Louis Avenue in the City of St. Louis,

Missouri, was damaged by fire on August 23, 2006. Contractor received a call to board up the house that night, and it did so at approximately 9:30 p.m.[1] A salesman from Contractor discussed repairing the building with Homeowner, and that night she signed a document called a "Service Agreement." The Service Agreement authorized Contractor to perform work on the house, "As described in the scope submitted to/by our insurance company." Homeowner also agreed to "accept responsibility for payment upon completion. PER INSURANCE ESTIMATE 1/3 DOWN, 1/3 ROUGH IN, BALANCE ON COMPLETION." The second page of the Service Agreement contained a clause under the heading "DELAYS, ETC." that provided that "Purchaser further agrees to pay Contractor an amount equal to 15% of the total contract price should Purchaser cancel this contract **for any reason** prior to the initiation of work on the Purchaser's roof." (Emphasis added). This document did not contain a set price for the work to be performed, nor did it require that any estimates for work to be performed be accepted or approved by Homeowner or Homeowner's insurance provider. Contractor examined the damaged property, took photos, and sent several estimates for different scopes of work to be done to Homeowner's insurance company, with the amounts ranging from $36,506.98 for an estimate dated September 15, 2006, to $91,606.28, which included a stated profit of $7,633.86 as well as overhead of $7633.86 for an estimate dated October 3, 2006. The insurance company rejected these estimates. Homeowner hired a public adjuster at Contractor's suggestion, who prepared two estimates. The first estimate, dated September 13, 2006, stated a net claim of $39,626.34, and the second estimate of October 15, 2006, asserted a

net claim of $56,498.53. Homeowner called Contractor to cancel the "contract." On November 1, 2006, Contractor sent a letter to Homeowner that blamed the delays on starting the repairs on the failure of the public adjuster and Homeowner's insurer to agree on the scope of work. It stated that she could use another contractor and she would be released from the agreements signed on August 23, 2006, for a cancellation fee of fifteen percent of its last estimate of $64,498.53. Another contractor performed the work.

Contractor sued Homeowner for breach of contract. Homeowner's answer to Contractor's complaint raised the affirmative defense of unconscionability. The case was tried without a jury. Two witnesses testified, the president/owner of Contractor and Homeowner. Contractor's salesman who proposed the Service Agreement to Homeowner did not. The Service Agreement, along with Contractor's several estimates, the estimates of the public adjuster, and several pieces of correspondence were entered into evidence.

The trial court found that Homeowner's house was damaged by fire on August 23, 2006, that Contractor did emergency boarding up that night, and that Homeowner entered into a contract with Contractor that same night that had a liquidated damages clause. It found that there were a number of bids presented as evidence, including a bid by Contractor for over $90,000 submitted within two days of the fire, but that "it is less clear whether or not the actual scope of work was agreed upon." The trial court found that the public adjuster's estimate of October 15, 2006, indicated that the proper scope of work was $56,498.53. It also found that the "contract" had a liquidated damages clause of fifteen percent of the contract price if

---

1. Contractor has admitted that it was paid for the work of boarding up the house.

Homeowner cancelled prior to the start of work, and that Homeowner did cancel the contract.

The trial court found that in this case "it would have been difficult to prove damages at the time the contract was entered into on August 23, 2006, **because, not only had an estimate not been prepared, but the negotiation between the adjusters, which ultimately leads to the scope of work to be performed had not occurred."** (Emphasis added). It also found that the profit estimate was approximately ten percent of the cost of the work, and "[t]herefore, **a penalty clause of fifteen percent (15%) would not be unreasonable."** (Emphasis added). It determined that the proper scope of work is $56,498.53, and that fifteen percent of that amount is $8,473.78, and awarded that amount as damages to Contractor, and a further $2,000 for reasonable attorney's fees.

Homeowner now appeals.

■■■ We will affirm the judgment of the trial court in a bench-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We consider the evidence in the light most favorable to the prevailing party and give that party the benefit of all reasonable inferences from the record, disregarding all evidence to the contrary. *Stoup v. Robinson*, 933 S.W.2d 935, 935 (Mo.App.1996). As the trier of fact, the trial court determines the credibility of the witnesses and is free to believe or to disbelieve all, some, or none of the testimony of a witness. *Apted–Hulling Inc. v. L & S Properties, Ltd.*, 234 S.W.3d 486, 489 (Mo.App.2007).

In her first point relied on, Homeowner contends that the trial court erred in granting judgment in favor of Contractor because it was based on the liquidated damages clause, which was unconscionable under the circumstances presented.

■■■ Liquidated damages clauses are valid and enforceable, whereas penalty clauses are not. *Diffley v. Royal Papers,* 948 S.W.2d 244, 246 (Mo.App.1997). A penalty provision specifies a punishment for default, while liquidated damages are a measure of compensation that at the time of contracting, the parties agree will represent damages in the event of a breach. *Id.* For a damage clause to be valid as setting liquidated damages, the amount fixed as damages must be a reasonable prediction for the harm caused by the breach and the harm must be of a kind difficult to estimate accurately. *Id.* In determining whether an agreement sets forth liquidated damages or a penalty, this Court looks to the intent of the parties as determined from the contract as a whole. *Id.* at 246–47. The provision must be fixed on the basis of compensation, or else it is construed as a penalty clause primarily designed to compel performance. *Id.* at 247.

■■■ For purposes of our analysis, we will assume that the cancellation fee of the Service Agreement is a liquidated damages clause rather than a penalty. Accordingly, we address Homeowner's contention that the liquidated damages clause is unconscionable. There are two aspects to unconscionability: procedural unconscionability and substantive unconscionability. *State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 858 (Mo. banc 2006). The former deals with the formalities of making the contract, while the latter deals with the terms of the contract itself. *Id.* Procedural unconscionability focuses on things such as "high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process." *Id.*

Substantive unconscionability refers to "an undue harshness in the contract terms." *Id.* In general there must be procedural and substantive unconscionability before a contract or clause can be voided, though it need not be in equal amounts. *Whitney v. Alltel Communications, Inc.,* 173 S.W.3d 300, 308 (Mo.App.2005). (quoting *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.,* 597 S.W.2d 624, 634 (Mo.App.1979)).

■ The evidence shows that Contractor, through one of its salesmen, encouraged Homeowner to sign the Service Agreement the same day that her house was severely damaged by fire, and had just been boarded up by Contractor. The Service Agreement lacked any estimate of price or agreement as to the scope of work to be performed. It did not condition the contract formation upon Contractor and Homeowner coming to an agreement on the scope of work or price, or upon Homeowner's insurer accepting Contractor's "bids" and scope of work proposals. Homeowner stated that she does not read well. The failure to read a document prior to signing it is not a defense, and does not make a contract voidable, absent fraud. *See Dorsch v. Family Medicine, Inc.,* 159 S.W.3d 424, 436 (Mo.App.2005); *Gibson v. Adams,* 946 S.W.2d 796, 803 (Mo.App. 1997). A party capable of reading and understanding a document is charged with the knowledge of its contents if he or she signs it, even if the party fails to review it. *Id.* The fact that Homeowner may not have read or fully understood the documents does not make the "contract" void or voidable, although we note that the liquidated damages provision was placed under a section titled "DELAYS, ETC.". However, the circumstances surrounding the formation of the "contract," namely one of Contractor's salesmen encouraging Homeowner to sign binding agreements to repair her home only hours after it was extensively damaged by fire, lacking any definiteness as to scope of work or price, or at least making the contract contingent upon acceptance of Contractor's proposed scope of work and price estimate, is evidence of procedural unconscionability.

■ There must also be substantive unconscionability for a contract, or a provision thereof, to be void or voidable, which raises the issue of whether the terms of the Service Agreement are unduly harsh. The terms of the "contract" bound Homeowner to use the services of Contractor without first getting any preliminary estimates of the damages or being conditional upon an agreement being reached between Contractor and Homeowner's insurance provider. There is no set amount of liquidated damages set forth in the documents; rather it is set forth as fifteen percent of an unknown contract price. Contractor's estimates for the work to be performed on Homeowner's house ranged from less than $40,000 to over $90,000. This problem could have been avoided had the Service Agreement been drafted as a contract with a contingency clause requiring that Homeowner or Homeowner's insurance provider approve the scope of the work and the estimate by Contractor before the contract would be effective. In that event, if Homeowner chose not to use Contractor's services after an estimate had been approved by the insurer, she would have done so knowing how much that she would have to pay for the termination under the liquidated damages clause. As it was actually written, the Service Agreement was open-ended and forced Homeowner to wait for months while Contractor, the public adjuster, and her insurance company haggled over the scope of work to be done and the cost of making the repairs to her burned-out home. Ultimately she had to retain another company so that the work

could finally be completed and her home made liveable.

We observe that the trial court rejected all of the estimates provided by Contractor as a basis for awarding damages, including the figure of $64,498.53 claimed in Contractor's letter of November 1, 2006, a letter issued more than two weeks after the public adjuster's estimate of $54,498.53 that the trial court found to be "reasonable." Had Homeowner agreed to use Contractor after receiving the November 1, 2006 letter, she would have had to pay a substantial amount over what the public adjuster thought that the repairs should cost and over what her insurer was prepared to authorize. Having signed the Service Agreement on August 23, 2006, Homeowner was compelled to use Contractor no matter how much its estimates exceeded those of the insurer's adjusters, or to pay a fifteen percent cancellation fee. Overall, the Service Agreement signed by Homeowner is unduly harsh and unconscionable. Based on the facts and circumstances presented in this case, where there is no agreement or contingency as to price or to the scope of the work, Contractor is not entitled to liquidated damages based on the Service Agreement, which is unconscionable and void. Point sustained.

Having found Homeowner's first point relied on dispositive, we need not address her second point relied on. The judgment of the trial court is reversed.

ROBERT G. DOWD, JR., P.J., and SHERRI B. SULLIVAN, J., concur.