

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| MANUEL H. LOPEZ, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| Respondent, | ) | WD76724 |
| vs. | ) ) ) | Opinion filed: May 6, 2014 |
| H & R BLOCK, INC., ET AL., | ) ) | |
| Appellants. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE ANN MESLE, JUDGE**

Before Division Two:  Victor C. Howard, Presiding Judge,
Alok Ahuja, Judge and Gary D. Witt, Judge

H&R Block, Inc., HRB Tax Group, Inc., and HRB Technology LLC (collectively "H&R Block") appeals from an order of the trial court denying its motion to compel arbitration.  The court found that an arbitration agreement contained in its Client Service Agreement is unconscionable and unenforceable.  H&R Block contends that the order is contrary to controlling precedent from the Missouri Supreme Court and the United States Supreme Court.  The order is reversed, and the case is remanded with directions.

## Factual and Procedural Background

The trial court found that the class action waiver in the parties' agreement "constitutes a substantial obstacle to arbitration" foreclosing any reasonable remedy for a consumer plaintiff. We must decide whether this basis was sufficient to deny H&R Block's motion to compel arbitration.

On April 14, 2011, Manuel Lopez visited an H&R Block office in Kansas City to have his tax returns prepared. Before receiving tax preparation services, Mr. Lopez was required to sign a standard form Client Service Agreement (CSA). The CSA contained an arbitration provision requiring individual arbitration. Specifically, the arbitration provision provided, in pertinent part:

> If a dispute arises between you and H&R Block, the dispute shall be settled through binding individual arbitration unless you opt-out of this arbitration provision using the process explained in bold type below. This alternative to traditional lawsuits may cost you only $5 to have your dispute with H&R Block decided by a third party. This third party, known as the Arbitrator, is empowered to settle the matter with the same set of remedies available in court including compensatory, statutory, and punitive damages, injunctive and other equitable relief, and attorneys' fees and costs. However, you agree to waive any right to participate in any "class action" lawsuit regarding any issue that could otherwise be settled by arbitration. In addition, you specifically agree to waive any right to "class action" arbitration….If any portion of this Arbitration Provision is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Provision; except that in the event that the waiver of class action rights is deemed invalid or unenforceable, any claim seeking relief on behalf of a class must be brought in a court of proper jurisdiction and not in arbitration.

The opt-out process was explained as follows in bold type:

> **Right to Opt-Out of This Arbitration Provision: H&R Block does not require you to accept arbitration even though you sign this Client Service Agreement (CSA) to receive service from us today. You may opt-out (reject) arbitration within the first 30 days after you sign this CSA by visiting our website at www.hrblock.com/goto/optout (if you provide an email address, you will receive an immediate confirmation) or by sending a signed letter to H&R Block Arbitration Opt-Out, P.O. Box 32818, Kansas City, MO 64171. The letter you send us should include your printed name, Social Security**

2

**Number of yourself and joint filer, if any, and the most recent date you were served by H&R Block, whether or not you want a written confirmation and the words "Reject Arbitration." Your electronic or written opt-out letter will override your signature below regarding arbitration but no other provision of this document.**

The agreement further provided that arbitration would be administered by the American Arbitration Association and included the following provision on arbitration costs:

You will be asked to pay a $5 fee, and H&R Block will pay all other filing, administrative, hearing and miscellaneous arbitration expenses up to $1,500. H&R Block may consider paying arbitration costs that exceed $1,500 but only if you win the arbitration.

The following year on April 4, 2012, Mr. Lopez returned to an H&R Block location to have his tax return prepared. He again signed a CSA, which included the same arbitration agreement and opt-out provision as in the 2011 CSA. On April 13, 2012, three days before filing this suit, Mr. Lopez opted out of the 2012 Arbitration Agreement via the website disclosed in the agreement.

On April 16, 2012, Mr. Lopez filed a class action lawsuit against H&R Block alleging on behalf of himself and a class of similarly situated H&R Block customers in Missouri that H&R Block engaged in a scheme to charge a deceptive "compliance fee," $2 in 2011 and $4 in 2012, in connection with its sale of tax return preparation services in violation of the Missouri Merchandising Practices Act and state common law. He claimed that H&R Block represented that the fee was charged to comply with IRS requirements but that the fee was not mandatory and not charged by the IRS.

H&R Block originally sought to compel arbitration of Mr. Lopez's claims relating to the 2011 and 2012 compliance fee. Three months later, however, H&R Block notified the trial court that it had made an error in determining that Mr. Lopez had not opted out of the arbitration agreement in the 2012 CSA and that it had discovered that he had in fact opted out of the 2012

3

arbitration agreement. It requested leave to file a revised motion to compel arbitration, which the trial court granted. In its revised motion, H&R Block sought to compel arbitration of Mr. Lopez's claims relating to the 2011 compliance fee only.

Mr. Lopez opposed H&R Block's motion to compel arguing that the arbitration provision in the 2011 CSA was unconscionable and, therefore, unenforceable under general principles of Missouri contract law. Specifically, Mr. Lopez presented evidence that he claimed showed (1) the CSA was non-negotiable and had never been renegotiated by a consumer, (2) the CSA, including the arbitration and opt-out provisions, was difficult to understand and was objectively confusing, (3) the CSA was the product of H&R Block's superior bargaining position, and (4) the terms of the arbitration provision were extremely one-sided and disproportionately favored H&R Block in a variety of aspects.

The trial court entered an order denying H&R Block's revised motion to compel. It focused its attention on the provision that limits arbitration to the individual dispute of the consumer. It noted that to arbitrate the $2 charge in this case, Mr. Lopez would be required to pay an initial fee of $5 and that while H&R Block would cover the next $1,500, there is no agreement by H&R Block to pay expenses in excess of that amount. The court found, "This exposure to additional fees and expenses in excess of $1,500 in a case where the arbitration is focused on a $2 charge, constitutes a substantial obstacle to arbitration and almost necessarily forecloses any challenge to the type of consumer claim asserted by [Mr. Lopez] in this litigation." The trial court also questioned whether the arbitration agreement was equally binding on both parties but expressly stated that it was not making such determination. Finally, the trial court noted that Mr. Lopez presented some evidence that H&R Block did not keep dependable records identifying consumers who had opted out of arbitration, which was sufficient

4

to overcome H&R Block's argument that a viable opt-out procedure existed and cured any unconscionable defect. The trial court found that the arbitration agreement in the CSA was unconscionable because "the fees [Mr. Lopez] might have to pay creates a substantial obstacle to litigating this $2 charge, and because [Mr. Lopez] has presented substantial evidence that the opt-out procedure was not effective." This appeal by H&R Block followed.

## Standard of Review

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 510 (Mo. banc 2012). "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *Id.* (internal quotes and citation omitted). Whether the trial court should have granted the motion to compel arbitration is a question of law that the appellate court reviews *de novo. Id.*

## Points on Appeal

H&R Block raises three points on appeal challenging the trial court's denial of its revised motion to compel arbitration. It contends that the trial court erred in denying the motion on the ground that the cost of arbitration might exceed the value of Mr. Lopez's claim because the Federal Arbitration Act (FAA) preempts such theory. It also argues that even if the FAA allowed the trial court to treat the agreement as unenforceable, the trial court should have severed the cost provision under the severance provision of the agreement. Finally, H&R Block contends that the trial court erred in denying the motion on the ground that the agreement lacked a viable opt-out provision because its recordkeeping errors are legally irrelevant. Because the first point is dispositive, the other points are not addressed.

5

In its first point on appeal, H&R Block contends that the trial court erred in denying its motion to compel arbitration on the ground that the cost of arbitration might exceed the value of Mr. Lopez's claim. It argues that the FAA preempts such theory because it stands as an obstacle to enforcing arbitration agreements according to their terms. To support its argument, H&R Block relies on two recent Missouri Supreme Court cases, *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505 (Mo. banc 2012), and *Brewer v. Missouri Title Loans*, 364 S.W.3d 486 (Mo. banc 2012), which analyzed the United States Supreme Court case, *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011).

*Concepcion* held that the FAA preempted a California judicial rule that deemed unconscionable most collective arbitration waivers in consumer contracts "because the rule was 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' in enacting the FAA." *Robinson*, 364 S.W.3d at 512 (quoting *Concepcion*, 131 S.Ct. at 1753). *See also Brewer*, 364 S.W.3d at 489-90. *Concepcion* reasoned that the rule "violated the spirit of the FAA by undermining the FAA's intent to place arbitration agreements on equal footing with other contracts and to enforce arbitration agreements by their terms." *Robinson*, 364 S.W.3d at 512 (citing *Concepcion*, 131 S.Ct. at 1745-46).

While *Concepcion* instructs clearly that a court cannot invalidate an arbitration agreement on the sole basis that it contains a class waiver, it does not require that a court must simply declare an arbitration agreement containing a class waiver enforceable. *Id.* at 514-15. It acknowledged that the FAA's "saving clause" allows an arbitration agreement to be declared unenforceable on any ground that exists at law or in equity for revocation of a contract. *Id.* at 513 (citing 9 U.S.C. § 2). *See also Brewer*, 364 S.W.3d at 490. "[A]s such, the FAA's 'saving clause' permits arbitration agreements 'to be invalidated by generally applicable contract

defenses, such as fraud, duress, or unconscionability." *Robinson*, 364 S.W.3d at 513 (quoting *Concepcion*, 131 S.Ct. 1746). *See also Brewer*, 364 S.W.3d at 490.

However, *Concepcion* instructs that an arbitration agreement may not be invalidated by any defense that singles out or disfavors arbitration. *Robinson*, 364 S.W.3d at 515 (citing *Concepcion*, 131 S.Ct. at 1746, 1748). In other words, "no state-law rule that is 'an obstacle to the accomplishment of the FAA's objectives' should be applied to invalidate an arbitration agreement." *Id.* (quoting *Concepcion*, 131 S.Ct. at 1748). "As such, post-*Concepcion*, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts." *Id.* (citing *Concepcion*, 131 S.Ct. at 1750). "Moreover, post-*Concepcion*, courts may not apply state public policy concerns to invalidate an arbitration agreement even if the public policy at issue aims to prevent undesirable results to consumers." *Id.* at 515-16 (citing *Concepcion*, 131 S.Ct. at 1753, which rejected consumers' public policy concerns about small-dollar claims slipping through the legal system). *See also Am. Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2312 n.5 (2013)(emphasizing that, following *Concepcion*, "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-value claims."). The question of whether a state law defense, including an unconscionability defense, stands as an obstacle to the accomplishment of the FAA's objectives requires analysis of the particular facts of the case. *Brewer*, 364 S.W.3d at 491, 492.

In *Robinson*, the Missouri Supreme Court applied *Concepcion* to reverse the trial court's judgment finding that a consumer arbitration agreement was unconscionable and unenforceable because its class action waiver deprives borrowers of a meaningful remedy. *Robinson*, 364

7

S.W.3d at 506-07, 517. The Court explained that under the FAA's saving clause, the trial court instead should have assessed whether the arbitration agreement was enforceable in light of the plaintiff's unconscionability claims based on Missouri contract law. *Robinson*, 364 S.W.3d at 506, 517. It noted that the plaintiff presented evidence regarding her lack of sophistication and her lack of understanding of the agreement; the agreement's print size, location, and clarity; and the high rate of interest available under the loan contract. *Id.* at 508. The Court found that because the trial court's judgment adjudicated only the plaintiff's claim of unconscionability based on the class waiver, factual issues remained that were relevant to determining whether the arbitration agreement was properly declared unconscionable under ordinary state law principles that govern contracts. *Id.* Thus, the Court remanded the case for such determination. *Id.*

In *Brewer*, the trial court found the class arbitration waiver in a loan agreement unconscionable and unenforceable but also found that a number of other aspects of the clause rendered the agreement unconscionable when considered as an individual action. 364 S.W.3d at 488. The Missouri Supreme Court held that under *Concepcion*, the presence and enforcement of a class arbitration waiver did not make the arbitration clause unconscionable. *Id.* at 487. It explained that because, unlike in *Robinson*, the trial court did reach other factual issues in determining that the arbitration clause was unconscionable, the record was sufficient for it to determine the conscionability of the arbitration clause. *Id.* at 492. It, therefore, applied traditional Missouri contract law in looking at the agreement as a whole to determine the conscionability of the arbitration provision. *Id.* It explained that "[t]he purpose of the unconscionability doctrine is to guard against one-sided contracts, oppression and unfair surprise." *Id.* at 492-93. It continued:

> Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the

> objectively unreasonable terms. In either case, the unconscionability is linked inextricably with the process of contract formation because it is at formation that a party is required to agree to the objectively unreasonable terms.

*Id.* at 493. The Court found that the evidence in the case supported a determination that the agreement's arbitration clause was unconscionable. *Id.* at 493. Specifically, it identified evidence that (1) the entire loan agreement including the arbitration clause was non-negotiable and was difficult for the average consumer to understand, (2) no consumer had ever successfully renegotiated the terms of the title company's arbitration agreement, (3) the title company was in a superior bargaining position, (4) the terms of the agreement were extremely one-sided in that the title company never pays the costs of arbitration or attorney's fees for the customer, even if the customer wins, and could seek to recover attorney's fees in defending the claim from the customer, (5) there was a lack of available counsel to pursue individual claims,[1] and (6) the agreement did not bilaterally provide that any and all disputes between the parties must be decided by binding, individual arbitration but instead bound the consumer to individual arbitration for all claims against the company while reserving the company's right to obtain its primary remedies through the court system. *Id.* at 493-95. Because the entire arbitration agreement was unconscionable and unenforceable, the Court affirmed the judgment of the trial court. *Id.* at 496.

In this case, Mr. Lopez raised multiple arguments challenging the enforceability of the arbitration agreement in the CSA based on Missouri contract law prohibiting unconscionable agreements. As noted above, he presented evidence that he claimed showed (1) the CSA was non-negotiable and had never been renegotiated by a consumer, (2) the CSA, including the

---

[1] *Brewer* recognized that *Concepcion* makes it clear that unavailability of counsel is not alone sufficient to invalidate the requirement of individual arbitration but stated that it remains one of the relevant considerations in assessing the overall conscionability of an arbitration clause because in some cases, it is related to whether the FAA's interest in dispute resolution will be satisfied. *Id.* at 494.

arbitration and opt-out provisions, was difficult to understand and was objectively confusing, (3) the CSA was the product of H&R Block's superior bargaining position, and (4) the terms of the arbitration provision were extremely one-sided and disproportionately favored H&R Block in a variety of aspects. On the other hand, H&R Block argued that a viable opt-out procedure existed and cured any unconscionable defect, and evidence was presented regarding the opt-out provision. The trial court, however, invalidated the arbitration agreement based on the public policy concern that consumers with small-value claims would be deprived of a meaningful remedy. Specifically, the trial court found, "This exposure to additional fees and expenses in excess of $1,500 in a case where the arbitration is focused on a $2 charge, constitutes a substantial obstacle to arbitration and almost necessarily forecloses any challenge to the type of consumer claim asserted by [Mr. Lopez] in this litigation." *Robinson* specifically rejected such public policy reasoning post-*Concepcion* even if the policy aims to prevent undesirable results to consumers. 364 S.W.3d at 515-16. *See also Brewer*, 364 S.W.3d at 487, 488 (the FAA does not permit finding an arbitration agreement unconscionable on the basis of a class action waiver alone). *Robinson* explained, "Applying state-law policy considerations as the basis for invalidating an arbitration agreement is preempted by the FAA because it creates an impermissible 'obstacle to the FAA's objective of enforcing arbitration agreements according to their terms.'" *Id.* at 516 (quoting *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212-13 (11th Cir. 2011)). The trial court clearly erred in finding the arbitration provision in the CSA unenforceable based on public policy concerns regarding class waivers. While the trial court questioned whether the arbitration agreement was equally binding on both parties, it expressly stated that it was not making such determination at the time. And while it did note that Mr. Lopez presented evidence that would call the sufficiency of the opt-out procedure into question,

10

the court did not make a definitive finding as to the sufficiency of that procedure nor did it make any other findings on the other evidence or adjudicate Mr. Lopez's other claims of unconscionability under ordinary state law principles. Consequently, as in *Robinson*, there remain factual issues relevant to Mr. Lopez's other claims. Thus, the case is remanded to the trial court to assess the evidence and determine if the arbitration agreement contained in the CSA is enforceable in light of *Robinson* and *Brewer*.

For the foregoing reasons, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.


_____
VICTOR C. HOWARD, JUDGE

All concur.

11