

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MANUEL H. LOPEZ, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | WD78465 |
| Respondent, | ) ) | OPINION FILED: March 8, 2016 |
| v. | ) ) | |
| H&R BLOCK, INC., ET AL., | ) ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable S. Margene Burnett, Judge

Before Division Two: Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

H&R Block, Inc., HRB Tax Group, Inc., and HRB Technology, LLC (collectively

"H&R Block") appeal a trial court order denying a motion to compel arbitration because

the arbitration provision is unconscionable. H&R Block argues that the arbitration

provision set forth in a 2011 Client Service Agreement signed by Manuel H. Lopez

("Lopez") is not unconscionable. H&R Block alternatively argues that unconscionable

terms in the arbitration provision, if any, should have been severed. Because all of

Lopez's claims are within the scope of a separate arbitration agreement as to which Lopez

exercised the right to opt-out of arbitration, we will not address whether the arbitration provision in the 2011 Client Service Agreement is unconscionable. We affirm the trial court's order denying H&R Block's motion to compel arbitration, though on grounds other than those relied on by the trial court.

## Procedural History

This is the second appeal from a trial court order denying H&R Block's motion to compel arbitration. In *Lopez v. H & R Block, Inc.*, 429 S.W.3d 497, 503 (Mo. App. W.D. 2014) ("*Lopez I*"), we reversed an order refusing to compel arbitration because the trial court based its decision solely on "the public policy concern that consumers with small-value claims would be deprived of a meaningful remedy" because of a class action waiver clause, in contravention of the decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). However, because arbitration provisions are otherwise subject to general state law contract defenses so long as neutrally applied, we remanded the case to the trial court to assess the evidence and to determine whether the arbitration provision at issue was "enforceable in light of *Robinson* and *Brewer.*" *Lopez I*, 429 S.W.3d at 503 (citing *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 514-15 (Mo. banc 2012); *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 488 (Mo. banc 2012). On remand, the trial court once again denied H&R Block's motion to compel arbitration, finding the arbitration provision to be unconscionable.

## Factual Background

On April 14, 2011, Manuel Lopez ("Lopez") visited an H&R Block office in Kansas City to have his 2010 tax returns prepared. Lopez was required to sign a standard

2

form Client Service Agreement ("2011 CSA"). The 2011 CSA was a single page agreement that identified the professional services H&R Block agreed to provide, and the documents and information Lopez agreed to provide to permit H&R Block to perform its services. The 2011 CSA contained an arbitration provision. The arbitration provision appeared approximately half way down the page, and provided in part as follows:

**ARBITRATION IF A DISPUTE ARISES BETWEEN YOU AND H&R BLOCK**

If a dispute arises between you and H&R Block, the dispute shall be settled through binding individual arbitration unless you opt-out of this arbitration provision using the process explained in bold type below. This alternative to traditional lawsuits may cost you only $5 to have your dispute with H&R Block decided by a third party. This third party, known as the Arbitrator, is empowered to settle the matter with the same set of remedies available in court including compensatory, statutory, and punitive damages, injunctive and other equitable relief, and attorneys' fees and costs. However, you agree to waive your rights to sue H&R Block in court before a judge and jury, and to waive any right to participate in any "class action" lawsuit regarding any issue that could otherwise be settled by arbitration. In addition, you specifically agree to waive any right to "class action" arbitration . . . . If any portion of this Arbitration Provision is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Provision; except that in the event that the waiver of class action rights is deemed invalid or unenforceable, any claim seeking relief on behalf of a class must be brought in a court of proper jurisdiction and not in arbitration.

> **Right to Opt–Out of This Arbitration Provision: H&R Block does not require you to accept arbitration even though you must sign this Client Service Agreement (CSA) to receive service from us today. You may opt-out (reject) arbitration within the first 30 days after you sign this CSA by visiting our website at www.hrblock.com/goto/optout (if you provide an email address, you will receive an immediate confirmation) or by sending a signed letter to H&R Block Arbitration Opt–Out, P.O. Box 32818, Kansas City, MO 64171. The letter you send us should include your printed name, Social Security Number of yourself and joint filer, if any, and the most recent date you were served by H&R Block, whether or not you want a written confirmation and the words**

3

**"Reject Arbitration." Your electronic or written opt-out letter will override your signature below regarding arbitration but no other provision of this document.**

The arbitration provision continued with clauses explaining "How Arbitration Works," and "Other Arbitration Terms & Information." These clauses advised that arbitration would be administered by the American Arbitration Association ("AAA"); that AAA would name an experienced neutral arbitrator; and that AAA rules were available by mail or on the internet, with appropriate addresses provided. The clauses explained that to initiate arbitration, a customer "will be asked to pay a $5 fee, and H&R Block will pay all other filing, administrative, hearing and miscellaneous arbitration expenses up to $1,500. H&R Block may consider paying arbitration costs that exceed $1,500 but only if you win the arbitration."

Lopez did not exercise his right to opt-out of arbitration after signing the 2011 CSA.

On April 4, 2012, Lopez returned to an H&R Block location to have his 2011 tax returns prepared. By then, Lopez had consulted with counsel, and counsel had contacted H&R Block questioning a $2 compliance fee Lopez was charged in 2011. When Lopez returned to H&R Block to have his 2011 tax returns prepared, he was again required to sign a Client Service Agreement ("2012 CSA"). This time, however, Lopez timely exercised his right to opt-out of arbitration, using the on-line address set forth in the 2012 CSA. He did so on April 13, 2012.

On April 16, 2012, Lopez filed a class action lawsuit against H&R Block on behalf of himself and a class of similarly situated H&R Block customers in Missouri.

4

The petition alleged that H&R Block prepared Lopez's tax returns in both 2011 and 2012 and that Lopez paid a $2 or $4 "compliance fee" both years. The petition alleged that H&R Block engaged in a scheme in violation of the Missouri Merchandising Practices Act ("MMPA") and state common law by misrepresenting that the "compliance fee" was charged to comply with IRS requirements. The petition acknowledged that H&R Block's Client Service Agreement form contained an arbitration provision but alleged that the provision "is unconscionable and cannot be enforced."

On July 23, 2012, H&R Block filed a motion to compel arbitration of all of Lopez's claims. In its suggestions in support of the motion, H&R Block alleged that "all of the claims [Lopez] raises . . . are subject to a binding arbitration agreement contained in the [2012 CSA]." [L.F. 29] The suggestions disputed Lopez's unconscionability contention because the arbitration provision in the 2012 CSA contained an "opt-out" clause. [L.F. 30] Specifically, H&R Block alleged that "[a]lthough [Lopez] was certainly aware of the opt-out clause--indeed he was represented by counsel who reviewed the arbitration clause *during the opt-out period*--[Lopez] declined to opt-out." [L.F. 30] H&R Block also alleged that the 2011 CSA "contains an arbitration clause that is substantially similar to the 2012 CSA arbitration clause," but that the "2012 CSA arbitration clause . . . supersede[s] the 2011 CSA arbitration clause . . . and appl[ies] to all of [Lopez's] claims, including those from 2011." [L.F. 31, n.3]

On October 24, 2012, three months after the motion to compel arbitration was filed, and more than six months after Lopez's petition was filed, H&R Block filed a pleading advising the trial court that it had just discovered that Lopez timely exercised his

right to opt out of arbitration following execution of the 2012 CSA. Based on a stipulation between the parties, the trial court entered an order on December 28, 2012, permitting H&R Block to withdraw its original motion to compel arbitration. The stipulation and related trial court order authorized H&R Block to re-file the *identical* motion to compel and supporting suggestions, which H&R Block did on January 3, 2013.[1] The stipulation and related order also required H&R Block to secure leave to file a revised motion to compel, which H&R Block did on January 29, 2013. The revised motion to compel arbitration was expressly limited to Lopez's claims regarding the 2011 compliance fee and relied exclusively on Lopez's execution of the 2011 CSA. H&R Block agreed that Lopez's claims relating to the 2012 compliance fee are not subject to arbitration. [L.F. 268, n.2]

On remand, Lopez and H&R Block argued the merits of the revised motion to compel arbitration relying on evidence previously submitted.[2] Lopez argued that the arbitration provision in the 2011 CSA was unconscionable and unenforceable because: (1) the 2011 CSA was non-negotiable; (2) the arbitration provision in the 2011 CSA was difficult to understand; (3) the 2011 CSA was the product of H&R Block's superior bargaining position; (4) the arbitration provision in the 2011 CSA was extremely one-sided and disproportionately favored H&R Block; and (5) consumers would not be able to locate counsel willing to pursue small monetary claims to recover the "compliance fee," leaving consumers with no practical, viable means of individualized dispute

---

[1]The re-filed motion to compel thus again relied exclusively on the 2012 CSA and took the position that the 2012 CSA superseded the 2011 CSA and covered all of Lopez's claims in the litigation.

[2]Following our remand in *Lopez I*, Lopez's case was reassigned to a different judge due to the retirement of the judge who originally denied H&R Block's motion to compel arbitration.

6

resolution. H&R Block argued that the arbitration provision in the 2011 CSA was not unconscionable for any of these reasons and that the opt-out right described in the arbitration provision negated a finding of unconscionability. Lopez argued that the opt-out clause was illusory because it was susceptible to ineffective exercise as evidenced by H&R Block's failure to timely confirm that Lopez had exercised his opt-out right after signing the 2012 CSA.

On March 12, 2015, the trial court again denied H&R Block's motion to compel arbitration, finding the arbitration provision in the 2011 CSA to be unconscionable and unenforceable.[3] The trial court also concluded that the opt-out right described in the arbitration provision was illusory.

H&R Block timely appealed the trial court's order denying its motion to compel arbitration.

### Standard of Review

"Whether the trial court should have granted a motion to compel arbitration is a question of law that this Court reviews *de novo*." *Robinson*, 364 S.W.3d at 510; *Brewer*, 364 S.W.3d at 492. "We will affirm the trial court's judgment if it is 'cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient.'" *Motormax Financial Services Corp. v. Knight*, 474 S.W.3d 164, 168 (Mo. App. E.D. 2015) (quoting *Gemini Capital Group, LLC v. Tripp*, 455 S.W.3d 583, 587

---

[3]The trial court's conclusions were almost exclusively based on comparison of the arbitration provision in the 2011 CSA to the arbitration provision involved in *Brewer*. *Lopez I* did direct the trial court to determine whether the arbitration provision at issue was "enforceable in light of *Robinson* and *Brewer*." *Lopez I*, 429 S.W.3d at 503. However, it should go without saying that the trial court would also have been bound to consider Missouri and United States Supreme Court decisions issued after *Robinson* and *Brewer* that have addressed whether and on what basis arbitration provisions can be declared unconscionable.

(Mo. App. S.D. 2013)). "Our primary focus is on whether the trial court reached the correct result, rather that the route taken to reach it." *Knight*, 474 S.W.3d at 168 (citing *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010)).

**Analysis**

H&R Block asserts in its first and second points on appeal that the trial court erred in denying its motion to compel arbitration because the arbitration provision in the 2011 CSA is not unconscionable, particularly in light of the opt-out right described in the provision. H&R Block alternatively asserts in its third point on appeal that any unconscionable terms in the arbitration provision should have been severed.

We need not determine whether the arbitration provision in the 2011 CSA is unconscionable. All of Lopez's claims fall within the scope of the arbitration provision in the 2012 CSA as to which Lopez is conceded to have exercised his right to opt out.

"When faced with a motion to compel arbitration, we must consider three factors." *Frye*, 321 S.W.3d at 434. "First, we must 'determine whether a valid arbitration agreement exists.'" *Id.* (quoting *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006) (citations omitted)). "Second, if a valid arbitration agreement exists, we must determine 'whether the specific dispute falls within the scope of the arbitration agreement.'" *Frye*, 321 S.W.3d at 434 (quoting *Nitro Distrib., Inc.*, 194 S.W.3d at 345). "Third, if a valid arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must determine whether the arbitration agreement is subject to [defenses against its enforcement] under applicable contract principles." *Frye*, 321 S.W.3d at 434-35.

8

The defense of unconscionability[4] raised by Lopez in response to H&R Block's motion to compel arbitration plainly implicates the third step in our required *de novo* analysis. However, we do not address defenses to enforcement of an arbitration agreement unless we are first satisfied that an arbitration agreement exists and that the subject disputes are within its scope.

Here, it is uncontested that arbitration agreements were formed by virtue of Lopez's execution of both the 2011 CSA and the 2012 CSA. However, the parties conceded during oral argument that the scope of those agreements--the second inquiry required by our *de novo* analysis--remains unresolved.

The arbitration provisions in the 2011 CSA and the 2012 CSA are identical in their description of the disputes within their scope. Both provide that "[i]f *a dispute* arises between you and H&R Block, *the dispute* shall be settled through binding individual arbitration unless you opt-out of this arbitration provision using the process explained in bold type below." (Emphasis added.)

Lopez's claims against H&R Block involve a compliance fee he was charged in both 2011 and 2012. Lopez's claims plainly involve "a dispute" between Lopez and H&R Block. Lopez's claims plainly fall, therefore, within the scope of the arbitration provision in both the 2011 CSA and the 2012 CSA.

---

[4]Though we are now directed by *Brewer*, 364 S.W.3d at 492, n.3, to determine whether unconscionability impacts the formation of a contract, unconscionability remains an affirmative defense as to which the party asserting the defense bears the burden of proof and persuasion. *Eaton*, 461 S.W.3d at 432 (holding that court "'will analyze the issues in this appeal to determine if, under the factual record presented,' Mr. Eaton 'has established a[n unconscionability] defense to the formation of the agreement's arbitration clause") (quoting *Brewer*, 364 S.W.3d at 492 (holding that court would "determine if, under the factual record presented, Brewer has established a defense to the formation of the agreement's arbitration clause"); *In re Estate of Looney*, 975 S.W.2d 508, 520 (Mo. App. S.D. 1998) (holding that unconscionability is an affirmative defense and that the party asserting the defense has the burden of proof).

When asked about this issue, H&R Block took the position during oral argument that the 2011 CSA and the 2012 CSA are "stand alone" agreements, each limited in scope to disputes that relate to services provided contemporaneous with the execution of each agreement. However, H&R Block conceded that neither of the arbitration provisions include a temporal reference limiting "a dispute" or "the dispute" to that year's tax preparation services. It is noteworthy, in fact, that when H&R Block filed its initial motion to compel arbitration in July 2014, it sought only to enforce the arbitration provision in the 2012 CSA. H&R Block asserted that "the 2012 CSA arbitration clause . . . . appl[ies] to all of [Lopez's] claims, *including those from 2011*" because "the 2012 CSA arbitration clause *applies to the same subject matter* as the 2011 CSA arbitration clause."[5] [L.F. 31, n.3] (Emphasis added.)

We agree with H&R Block's construction of the arbitration provision in the 2012 CSA. And that construction was not subject to change merely because Lopez exercised his right to opt-out after signing the 2012 CSA. No clause in the arbitration provision in the 2012 CSA purports to limit the disputes covered by the provision should a customer exercise the right to opt out.[6] To the contrary, the arbitration provision provides that all

---

[5]After H&R Block realized that Lopez exercised the right to opt-out following execution of the 2012 CSA, H&R Block withdrew its initial motion to compel arbitration, then re-filed an *identical* motion to compel arbitration in January 2015, re-asserting the position that the scope of the arbitration provision in the 2012 CSA included all of Lopez's claims, including those from 2011. [L.F. 175] H&R Block later secured leave to file a revised motion to compel, where, for the first time, it relied only on the arbitration provision in the 2011 CSA and sought its application only to Lopez's 2011 claims. The revised motion to compel was the subject of the trial court's order and judgment refusing to compel arbitration both here and in *Lopez I*.

[6]The record includes a copy of H&R Block's 2013 CSA. The arbitration provision in the 2013 CSA has been significantly modified when compared to the arbitration provisions contained in the 2011 and 2012 CSA's. The 2013 CSA now provides that "[t]his Arbitration Agreement shall supersede all prior arbitration agreements between you and H&R Block unless you are a member of a putative or certified class in a class lawsuit against H&R Block on the date you sign the CSA, in which case any prior arbitration agreement you signed shall remain in force and effect for any claims currently asserted in that class action lawsuit. If you opt out of this Arbitration Agreement,

disputes "shall be settled through binding individual arbitration unless you opt-out of *this* arbitration provision." (Emphasis added.) We are left with the inexorable conclusion that based on the plain language of the arbitration provision in the 2012 CSA, Lopez's exercise of the right to opt-out following execution of the 2012 CSA operated as an opt-out for all disputes within the scope of the 2012 CSA's arbitration provision. By necessary implication, that includes all of the claims Lopez has asserted in his lawsuit.

The parties advised during oral argument that the issue as to whether all of Lopez's claims fall within the scope of the arbitration provision in the 2012 CSA was raised below.[7] However, the trial court was apparently not encouraged to determine that issue either before *Lopez I*[8] or in the order and judgment giving rise to this appeal. We are required, however, to determine whether the trial court should have granted H&R Block's motion to compel arbitration *de novo* and to affirm the trial court's order and judgment refusing to compel arbitration on any basis supported by the record. We are also required to limit our exercise of appellate jurisdiction to the resolution of "real, substantial, presently-existing controvers[ies]." *Jackson County Bd. of Election Comm'rs v. City of Lee's Summit*, 277 S.W.3d 740, 743 (Mo. App. W.D. 2008) (internal quotation omitted). Appellate courts are not in the business of rendering advisory opinions. We do not determine "speculative issues for the benefit of some other case at some other time." *Id*.

---

any prior arbitration agreement shall remain in full force and effect." We express no opinion about the legal effect of this language to limit the scope of the disputes that are subject to resolution under the 2013 CSA or any other form of CSA.

[7]We find no reference in the legal file to suggest that the scope issue was raised with the trial court. It is possible, of course, that the issue was addressed in off-the-record discussions between counsel and the trial court or in pleadings or proceedings that have not been included in the legal file.

[8]It is true we did not address the issue of the scope of the arbitration provisions in *Lopez I*. However, that does not relieve us of the obligation to do so here consistent with our standard of review.

at 743 (internal quotation omitted). Although the parties may have strategic interests that would be furthered by resolving whether the arbitration provision in the 2011 CSA is unconscionable, the resolution of that issue is detached from Lopez's claims, all of which fall within the scope of the arbitration provision in the 2012 CSA as to which Lopez exercised his right to opt-out.

## Conclusion

The trial court's order denying H&R Block's motion to compel arbitration of Lopez's claims is affirmed for the reasons set forth in this Opinion.


_____
Cynthia L. Martin, Judge

All concur.