

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| AMANDA MACKEY and GREG MACKEY, | ) ) | |
| Respondents, | ) | |
| v. | ) | WD84309 |
| | ) | |
| SCHOOLER'S CONSTRUCTION, L.L.C., | ) | |
| Appellant. | ) | FILED: February 15, 2022 |
| | ) | |

## APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### THE HONORABLE J. HASBROUCK JACOBS, JUDGE

### BEFORE DIVISION THREE: ANTHONY REX GABBERT, PRESIDING JUDGE, LISA WHITE HARDWICK, AND THOMAS N. CHAPMAN, JUDGES

Schooler's Construction, LLC ("Schooler's") appeals the circuit court's order denying its motion to compel arbitration of Amanda and Greg Mackey's ("the Mackeys") lawsuit alleging claims of negligence, breach of the implied contractual duty to perform work in a good and workmanlike manner, and breach of the implied warranty of habitability. Schooler's contends the arbitration clause in a limited warranty signed by the Mackeys requires arbitration of their claims. For reasons explained herein, we reverse and remand with instructions to stay the proceedings and compel arbitration.

FACTUAL AND PROCEDURAL HISTORY

On June 20, 2019, the Mackeys and Schooler's entered into a residential sale contract ("sale contract") and addendum for new construction. The sale contract required Schooler's to complete the construction of a new single-family residence in Ashland and convey the new house and land upon which it was located to the Mackeys in exchange for $356,000. The sale contract required Schooler's to provide a one-year builder warranty to the Mackeys. The sale contract also provided that the residence would have the same workmanship quality as another house on the same street. The addendum for new construction stated that Schooler's had to provide the signed builder's warranty to the Mackeys for review during the inspection period, and the Mackeys had to acknowledge receipt and acceptance of the builder's warranty by signature at closing. Because the parties signed the sale contract on June 20, 2019, the inspection period, as defined in the sale contract, was June 21 through June 30, 2019. Schooler's did not provide a builder's warranty to the Mackeys for review during the inspection period.

Closing on the Mackeys' new home occurred on September 27, 2019. At closing, Schooler's conveyed the real estate to the Mackeys, and the Mackeys paid Schooler's the amount owed under the contract. Schooler's and the Mackeys also executed a builder's limited warranty ("limited warranty"). The limited warranty stated that it "sets forth the entire post-closing agreement between the parties."

2

In the "Warranty Coverages" section of the limited warranty, Schooler's warranted that "the following elements of the Residential Dwelling shall be free from latent defects caused by defective workmanship performed by the BUILDER or BUILDER's subcontractors and/or by defective materials provided by BUILDER or BUILDER's suppliers." One of the elements listed was "Structural Components." In this provision, Schooler's warranted that, for a period of one year after the warranty date, the foundation and/or concrete slab for the house, the floor joists, the load bearing walls, and other internal structural components of the house that were installed by Schooler's and not covered by other parts of the limited warranty would be "free of substantial defects in materials or workmanship." The section defined what did, and did not, constitute a substantial defect:

> In the case of the foundation or concrete slab, a substantial defect shall be defined to include a defect which affects the structural soundness of the Residential Dwelling itself and includes cracks which may develop which are greater than one-quarter inch (1/4") in width. This warranty of BUILDER shall not extend to minor "hairline" cracks caused by natural shrinkage and earth movement and which do not affect the structural stability of the Residential Dwelling and/or which are less than one-quarter inch (1/4") in width.

The "Final Inspection" section of the limited warranty provided that, before the Mackeys accepted possession of the house, the Mackeys were to inspect the house and prepare a "punch list" identifying minor items of construction that had not yet been completed. Schooler's agreed that it would complete those items.

3

The limited warranty contained an arbitration clause that provided, in pertinent part:

> 9. <u>ARBITRATION</u>: Any controversy or claim arising out of or relating to this Limited Warranty, or the breach thereof, shall be settled by Arbitration in Boone County, Missouri, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrators may be entered in any Court having jurisdiction thereof. . . . No actions at law or in equity based upon or arising out of such controversy, claim or breach shall be commenced by any of the Parties, except to enforce arbitration decisions or decrees or to seek judicial review of the arbitration award as set forth herein.

Lastly, the limited warranty contained a severability clause stating that, if any of its provisions were held invalid, the remaining provisions of the limited warranty "shall remain in full force and effect."

Over a year after closing, the Mackeys filed a petition against Schooler's in the Circuit Court of Boone County. The Mackeys alleged they had entered into a contract with Schooler's to construct their residence. They alleged Schooler's failed to construct the residence in a good and workmanlike manner and with ordinary care and was otherwise negligent in that Schooler's failed to properly prepare the subgrade for the foundation and retaining walls and failed to pier the foundation or take other steps as necessary to ensure that the residence would not settle. The Mackeys further alleged that, as a direct and proximate result of these failures, the subgrade of the property had settled, causing significant interior damage to the residence, including that the basement walls, exterior retaining walls, and interior drywall walls had cracked; the cabinets had cracked

4

and pulled away from the walls; the floors had shifted out of level and were uneven; the countertops had shifted and were no longer level; and the master bathroom shower door had shifted and bowed away from the wall. The Mackeys claimed these defects were latent and unknown to them at the time of purchase. Additionally, the Mackeys alleged Schooler's failed to complete the punch list work, despite representing that it would. Based upon these allegations, the Mackeys asserted claims of negligence, breach of the implied contractual duty to perform work in a good and workmanlike manner, and breach of the implied warranty of habitability. They requested damages in excess of $25,000, plus prejudgment interest and attorney's fees and costs.

In response to the Mackeys' petition, Schooler's sent a demand for arbitration. The Mackeys declined to arbitrate. Schooler's subsequently filed a motion to compel arbitration and to stay the lawsuit pending arbitration. In its motion, Schooler's argued the Mackeys' claims fall within the scope of the limited warranty's arbitration agreement. Specifically, Schooler's alleged the primary complaint in the petition is that the foundation of the house is defective, and the limited warranty contains the standard for determining what is and is not a substantial foundation defect. Schooler's also alleged the secondary complaint in the petition is that Schooler's failed to perform the punch list work, and the limited warranty specifically addresses its responsibility for punch list work. The Mackeys filed a response asserting their claims do not arise out of the limited warranty; the existence of the limited warranty does not mandate arbitration of their claims; and

5

the limited warranty is unenforceable because it is a contract of adhesion and unconscionable. After hearing arguments, the court entered its order denying the motion to compel arbitration and stay the lawsuit pending arbitration. Schooler's appeals.

## STANDARD OF REVIEW

The circuit court's ruling on a motion to compel arbitration is an issue of law, which we review *de novo*. *Holm v. Menard, Inc.,* 618 S.W.3d 669, 673 (Mo. App. 2021). "Our review of the trial court's interpretation of an arbitration provision is also *de novo*, as arbitration is contractual, and contract interpretation is a question of law." *Id.* (citation omitted).

## ANALYSIS

Because the circuit court did not state its reason for denying Schooler's motion to compel arbitration, Schooler's points on appeal challenge the three grounds that the Mackeys raised in their response to the motion to compel. Schooler's asserts arbitration is required because the Mackeys' claims relate to or require reference to or construction of some portion of the limited warranty. Schooler's further argues that the limited warranty is not a contract of adhesion and that any portion of the limited warranty that may be deemed unconscionable does not affect the arbitration agreement and can be severed from the remainder of the limited warranty.[1]

---

[1] Schooler's does not argue on appeal that either the arbitrability issues, or any issues concerning the validity of the arbitration agreement, should be decided by the arbitrator rather than the court pursuant to a delegation clause either contained in the arbitration agreement or incorporated by reference into the arbitration agreement.

When ruling on a motion to compel arbitration, courts must consider: (1) "whether a valid arbitration agreement exists"; (2) "whether the specific dispute falls within the scope of the arbitration agreement"; and (3) "whether the arbitration agreement is subject to revocation under applicable contract principles." *Patrick v. Altria Grp. Distribution Co.*, 570 S.W.3d 138, 142-43 (Mo. App. 2019) (citation omitted). To determine the existence of a valid arbitration agreement, we consider whether the essential elements of a contract – offer, acceptance, and bargained for consideration – are present. *Id*. at 143. In looking for these essential elements, we review the parties' contract as a whole and not simply the arbitration agreement. *Holm*, 618 S.W.3d at 674.

In the parties' sale contract and addendum, Schooler's offered to sell real estate to the Mackeys, to complete the construction of a new house on the real estate, and to provide the Mackeys with a one-year builder warranty in exchange for $356,000. The Mackeys accepted the offer. Although the limited warranty was executed three months after the sale contract and addendum were executed, the limited warranty was part of the parties' whole contract, as the parties agreed in both the contract and addendum that Schooler's would provide a one-year warranty that the Mackeys would acknowledge and accept by their signature at closing. Because the parties' contract as a whole establishes the essential elements of a contract, a valid arbitration agreement exists.

The arbitration provision in this case requires arbitration of "[a]ny controversy or claim arising out of or relating to this Limited Warranty, or the

7

breach thereof." Throughout its briefs, Schooler's asserts that any claim that arises out of or relates to either the sale contract, the addendum, or the limited warranty is subject to arbitration under this provision because all three documents form the "whole contract" and "must be read together in an effort to capture what was intended." While we agree that all three documents form the parties' whole contract, the plain language of the arbitration provision expressly limits its application to only those claims that arise out of or relate to the limited warranty. *See St. Louis Reg'l Convention v. Nat'l Football League*, 581 S.W.3d 608, 617 (Mo. App. 2019) (noting that, in analyzing the scope of an arbitration agreement, we enforce any exclusions or exceptions in the agreement). Therefore, in determining the scope of the arbitration agreement, our only concern is whether the Mackeys' claims arise out of or relate to the limited warranty.

Arbitration is solely contractual and, therefore, "[p]arties cannot be required to arbitrate a dispute they have not agreed to submit to arbitration." *Id.* at 616. To decide whether the parties contracted to arbitrate a particular dispute, "the usual rules of state contract law and canons of contract interpretation apply." *Id*. at 617. Courts must ascertain the intent of the parties through the plain and ordinary meaning of the contract terms and give effect to that intent. *Id*. Courts "should order arbitration of any dispute that touches matters covered by the parties' contract." *Id*. "A motion to compel arbitration of a particular dispute should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Lunsford v. Deatherage*, 518 S.W.3d 890, 896 (Mo. App. 2017) (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 429 (Mo. banc 2003)). "Doubts as to arbitrability should be resolved in favor of coverage." *Id.* (quoting *Dunn*, 112 S.W.3d at 429).

"For a tort claim to be subject to arbitration, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract." *St. Louis Reg'l*, 581 S.W.3d at 617. "Where a tort claim is independent of the contract terms and does not require reference to the underlying contract, arbitration is not required." *Id.* "The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties." *Id.*

In this case, the Mackeys' claims assert that Schooler's breached duties that it assumed, under common law, when Schooler's agreed in the sale contract to construct the Mackeys' house. In Count I of their petition, the Mackeys assert that Schooler's performed its work in a negligent manner. "Where the parties have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. App. 2010) (quoting *Am. Mortg. Inv. Co. v. Hardin-Stockton Corp.*, 671 S.W.2d 283, 293 (Mo. App. 1984)). "The negligent failure to observe and perform any portion of that duty gives rise to an

9

action in tort." *Id.* (quoting *Am. Mortg.*, 671 S.W.2d at 293). In Count II, the Mackeys assert that Schooler's, as the general contractor, breached its implied contractual duty to perform its work in a good and workmanlike manner. "Missouri courts recognize that a general contractor does impliedly warrant that the work agreed upon will be done in a workmanlike manner." *Helterbrand v. Five Star Mobile Home Sales, Inc.,* 48 S.W.3d 649, 660 (Mo. App. 2001). "Workmanlike in this context is defined as 'work which is completed in a skillful manner and is non-defective.'" *Id.* at 661 (citation omitted). Lastly, in Count III, the Mackeys assert that Schooler's, as the vendor-builder of the residence, breached its implied warranty of habitability. "A purchaser is granted a right of recovery against a builder-vendor under an implied warranty of habitability or quality where structural defects are present in consequence of poor workmanship or substandard materials or both." *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 629 (Mo. App. 2014).

Although the Mackeys' claims are not based on a breach of the limited warranty, the central issue in each of their claims – Schooler's responsibility for alleged defects in the foundation that affect the structural soundness of the residence and for minor, punch list items of construction – is the same issue that the limited warranty purports to define. The "Final Inspection" section of the limited warranty provides that (1) Schooler's responsibility for repairs is limited to that stated in the limited warranty; and (2) the Mackeys acknowledge that the

10

limited warranty's purpose is to identify Schooler's responsibility for latent or hidden construction defects:

> Upon the acceptance of possession BUILDER'S responsibility to make further repairs to the Residential Dwelling is expressly limited to the following: (a) completion of all minor items of construction on the punch list and (b) performance of the warranty repairs under this Limited Warranty. BUYER and BUILDER acknowledge that the purpose of this Limited Warranty is to identify BUILDER's responsibility for construction defects of a latent or hidden kind that would have not have [sic] been found or otherwise discovered by a professional inspection of the Residential Dwelling prior to Closing.

The determination of the extent of Schooler's responsibility for the latent and hidden foundation defects and the minor punch list construction items alleged in the Mackeys' claims may depend upon a determination of the legal effect of this provision of the limited warranty on that responsibility. *See Lunsford*, 518 S.W.3d at 896-97. At a minimum, "the dispute touches on matters covered by the [limited warranty]." *St. Louis Reg'l*, 581 S.W.3d at 617. Consequently, "we cannot say 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers'" the Mackeys' claims. *Lunsford*, 518 S.W.3d at 897 (quoting *Dunn*, 112 S.W.3d at 429). Because any "[d]oubts as to arbitrability should be resolved in favor of coverage," *id.* at 896, the Mackeys' claims fall within the scope of the arbitration agreement. Points I and II are granted.

In Point III, Schooler's addresses the Mackeys' affirmative defense that the limited warranty is unenforceable because it is a contract of adhesion and is

11

unconscionable.[2]  In their response to the motion to compel arbitration, the

Mackeys contended the limited warranty is a contract of adhesion because

Schooler's provided it to them on the day of closing, insisted they sign it, and

gave them no opportunity to review it or negotiate its terms.  The Mackeys

alleged that, if they did not sign the limited warranty, then the closing would not

have taken place, and "they would have no home at all."

Section 435.350, RSMo 2016, of the Missouri Uniform Arbitration Act

provides that contracts, like the limited warranty, that warrant new homes against

construction defects are not contracts of adhesion:

> A written agreement to submit any existing controversy to arbitration
> or a provision in a written contract, except contracts of insurance and
> contracts of adhesion, to submit to arbitration any controversy
> thereafter arising between the parties is valid, enforceable and
> irrevocable, save upon such grounds as exist at law or in equity for
> the revocation of any contract.  *Contracts which warrant new homes
> against defects in construction and reinsurance contracts are not
> "contracts of insurance or contracts of adhesion" for purposes of the
> arbitration provisions of this section.*

(Emphasis added.)

Moreover, even if the limited warranty were a contract of adhesion, "courts

do not view adhesion contracts as inherently sinister and automatically

unenforceable."  *Hartland Comput. Leasing Corp. v. Ins. Man, Inc.*, 770 S.W.2d

525, 527 (Mo. App. 1989).  Instead, only those provisions that "fail to comport"

---

[2] The party asserting a defense, such as unconscionability, to the formation of an agreement's arbitration clause bears the burdens of proof and persuasion on that issue. *Lopez v. H & R Block, Inc.*, 491 S.W.3d 221, 226 n.4 (Mo. App. 2016).

with the parties' objectively reasonable expectations and "are unexpected and unconscionably unfair are unenforceable." *Fouts v. Regency N. Acquisition, LLC,* 569 S.W.3d 463, 467 (Mo. App. 2018) (internal quotation marks and citation omitted).

In their response to the motion to compel, the Mackeys argued that one of the limited warranty's provisions concerning exclusions from coverage is unconscionable and renders the entire limited warranty unenforceable. Because the limited warranty contains a severability clause and the provision that the Mackeys assert is unconscionable is not a part of, let alone a necessary part of, the agreement to arbitrate, the arbitration clause would still be enforceable even if the exclusions provision were deemed unconscionable.[3] *See Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 436 (Mo. banc 2015) (noting that generally, courts "will give effect to a severability clause when the clause being severed is not a necessary part of the contract"). *See also Greenpoint Credit, L.L.C. v. Reynolds*, 151 S.W.3d 868, 875 n.5 (Mo. App. 2004).

The Mackeys did not allege in their response to the motion to compel that the arbitration clause is unconscionable. Now, in their brief on appeal, they make only the bare assertion that "the purported arbitration clause is itself unconscionable." This conclusory and unsupported statement is insufficient to preserve the issue of the arbitration clause's alleged unconscionability for our review. *Shuttlewagon, Inc. v. Higgins*, 628 S.W.3d 185, 201 n.10 (Mo. App. 2021).

---

[3] We express no opinion on whether the exclusions provision at issue is unconscionable.

13

The Mackeys failed to meet their burden of proving that the arbitration clause is unenforceable because it is a contract of adhesion or is unconscionable.  To the extent that the circuit court relied on this basis to deny the motion to compel, it erred in doing so.  Point III is granted.

## CONCLUSION

The order denying Schooler's motion to compel arbitration is reversed.  The cause is remanded to the circuit court to stay the proceedings and order the parties to proceed to arbitration.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

14